

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2836 | **DATE** | 11/15/2004 |
| **CASE TITLE** | HSBC Bank USA vs. UAL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the March 30, 2004, judgment of the bankruptcy court order, granting summary judgment in favor of United based on its finding that the facilities lease was not a true lease, is reversed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 16 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 20 |
| | Copy to judge/magistrate judge. | | | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HSBC BANK USA, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED AIR LINES, INC., ) | |
| ) | Case Nos. 04 C 2836 |
| Appellee. ) | 04 C 2837 |
| ) | |
| _____ ) | |
| ) | Honorable John W. Darrah |
| CALIFORNIA STATEWIDE COMMUNITIES ) | |
| DEVELOPMENT AUTHORITY, ) | |
| ) | |
| Appellant, ) | |
| ) | **DOCKETED** |
| v. ) | |
| ) | NOV 1 6 2004 |
| UNITED AIR LINES, INC., ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the appeal of the judgment of the bankruptcy court of March 30, 2004, by HSBC Bank USA and California Statewide Communities Development Authority ("CSCDA"). For the reasons that follow, the decision of the bankruptcy court is reversed.

## BACKGROUND

CSCDA is a joint exercise-of-powers government agency consisting of a number of California counties, cities, and other local government agencies. CSCDA is organized pursuant to Chapter 5 of Division 7 of Title 1 of the Government Code of the State of California ("Joint Powers Act") and an Amended and Restated Joint Exercise of Powers Agreement dated as of June 1, 1988,

among the member local government agencies. Pursuant to the Joint Powers Act, CSCDA is authorized to exercise the power of its member local government agencies, among other things, to issue revenue bonds to pay the cost and expenses of acquiring or constructing publicly owned or operated commercial aviation airports and airport-related facilities.

On June 18, 1973, United entered into the "Maintenance Base Lease" with the City and County of San Francisco. Pursuant to the lease, United leased certain ramp space and facilities at San Francisco International Airport ("SFO"). To assist United in developing certain facilities at SFO, United and CSCDA consummated a transaction in 1997 pursuant to which CSCDA issued tax-exempt revenue bonds in the amount of $154,845,000.00. The funds from the sale of the bonds were made available to United in accordance with the terms of the 1997 SFO transaction documents.

The 1997 SFO transaction was comprised of multiple documents and agreements. Three agreements germane to the instant dispute are: (1) the Site Sublease, (2) the Facilities Lease, and (3) the Indenture of Mortgage and Deed of Trust ("Indenture").

Pursuant to the Site Sublease, United subleased to CSCDA an approximately twenty-acre portion of the premises leased to United under the Maintenance Base Lease for the nominal rent of one dollar. The term of the Site Sublease is defined as the period from September 1, 1997 to October 5, 2033, unless a shorter or longer period is required to retire bonds to be issued by CSCDA. There are no provisions for remedies for United for any default by CSCDA.

CSCDA then sub-subleased the leased premises back to United pursuant to the Facilities Lease. The term of the Facilities Lease is identical to that of the Site Sublease. The Facilities Lease's rental is the amount necessary to make the payments required under the Indenture – the amount needed to pay the bonds in accordance with their terms as well as administrative costs. The

Facilities Lease's rental amount also constituted reasonable compensation for the use and occupation of the relevant portion of the SFO Maintenance Base Lease - the 20-acre portion of the 130-acres the City and County leased to United. The Facilities Lease provides default provisions and remedies, including CSCDA's right to take possession of the leased facilities and relet them if United fails to make the required payments.

The Indenture provides for the issuance of tax-exempt bonds by CSCDA, for the SFO trustee to receive the proceeds of the sale of bonds for purposes of funding construction of defined improvements benefitting United, and for the SFO trustee to receive the rental payments from United under the Facilities Lease for the purpose of paying the debt service on the bonds and ultimately retiring them. The Indenture indicates that the bonds are "limited obligations" of CSCDA, payable only from the revenue received from United and earnings on this revenue. Pursuant to the Indenture, CSCDA assigned the Facilities Lease, including the right to collect rents, to the Indenture trustee, presently HSBC Bank USA.

On December 9, 2002, United filed a voluntary petition under Chapter 11 of Title 11, United States Code. On March 21, 2003, United filed an Adversary Complaint, seeking a declaratory judgment that certain of its payment obligations related to airport improvements were not obligations arising under "leases" pursuant to Section 365 of the Bankruptcy Code. Subsequently, all parties moved for summary judgment on the issue of whether the "leases" were true leases, as opposed to financing instruments.

On March 4, 2004, the bankruptcy court granted United's motion for summary judgment. HSBC Bank and CSCDA appeal that judgment to this Court.

## LEGAL STANDARD

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003) (*Hoseman*). All of the facts and the inferences therefrom are viewed in the light most favorable to the nonmoving party. *Hoseman*, 322 F.3d at 473. Similarly, a bankruptcy court's interpretation of statute is a question of law reviewed *de novo*. *See Meyer v. Rigolon*, 30 F.3d 1375, 1378 (7th Cir. 1994). The Court reviews the bankruptcy court's factual findings for clear error. *Hoseman*, 322 F.3d at 473.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no verdict could reasonably be returned for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

The bankruptcy court held that the Site Sublease and the Facilities Lease between United and CSCDA were not true leases for purposes of Bankruptcy Code § 365, finding that the 1997 SFO transactions ". . . are the economic equivalent of leasehold mortgages. . . ." The bankruptcy court applied federal law to determine if the instruments were true leases, rather than applying state law, as argued by the Appellants.

The appeal raises the following issues for review: (1) did the bankruptcy court err by failing to apply state (California) law to characterize the Site Sublease and the Facilities Lease; (2) was it

-4-

error for the bankruptcy court to ignore Seventh Circuit precedent; (3) did the bankruptcy court err in denying the Appellants' motions for summary judgment; and (4) did the bankruptcy court err in granting United's Motion for Summary Judgment.

The Appellants' first two arguments on appeal are interrelated. Appellants argue that the bankruptcy court erred in failing to apply state law, as required by Seventh Circuit precedent, when determining whether the Site Sublease and the Facilities Lease constituted true leases for § 365 purposes.

Section 365(a) provides the trustee, or debtor-in-possession in Chapter 11 cases, the power to assume or reject unexpired leases. 11 U.S.C. § 365(a). Certain requirements are imposed when the trustee wishes to assume an unexpired lease in default. The trustee must cure the default, compensate any parties that have suffered pecuniary loss from the default, and provide adequate assurance of future performance under the lease. 11 U.S.C. § 365(b). Leases of nonresidential real property are deemed rejected unless assumed within sixty days after an order for relief unless the court, for cause, grants additional time during that sixty-day period. 11 U.S.C. § 365(d).

The terms "unexpired lease" and "lease of nonresidential real property," as used in Section 365, are not defined in the Bankruptcy Code. In defining the terms, courts have relied upon the legislative history of Section 502(b)(6) of the Bankruptcy Code, which limits damage claims resulting from lease terminations which are allowable to a debtor's landlord. The pertinent legislative history states:

> Whether a "lease" is a true or [a] bona fide lease, or in the alternative, a financing "lease" or a lease intended as security, depends upon the circumstances of each case. The distinction between a true lease and a financing transaction is based upon the economic substance of the transaction and not, for example, upon the locus of title, the form of

>the transaction or the fact that the transaction is denominated as a "lease."

S.Rep. No. 598, 95th Cong., 2d Sess. 64, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5850. Based on this legislative history, courts require that a lease in question must be a "true" or "bona fide" lease for Section 365 to apply. *See In re Powers*, 983 F.2d 88, 89 (7th Cir. 1993) (deciding whether rental agreements were true leases) (*Powers*); *In re Moreggia & Sons, Inc.*, 852 F.2d 1179, 1182 (9th Cir. 1988) (*Moreggia*); *In re Lunan Family Restaurants*, 194 B.R. 429, 450 (N.D. Ill. 1996); *In re Hotel Syracuse, Inc.*, 155 B.R. 824, 838 (N.D.N.Y. 1993) (*Hotel Syracuse*).

Generally, Congress has left the determination of property rights in the assets of a bankrupt's estate to state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979) (*Butner*). The application of state law is applied to both ownership interests in property and security interests in such property. *Nobleman v. American Savings Bank*, 508 U.S. 324, 329 (1993). However, state law may be displaced if "some federal interest requires a different result." *Butner*, 440 U.S. at 55. In order to displace traditional state law, "the federal, statutory purpose must be 'clear and manifest' . . . Otherwise, the Bankruptcy Code will be construed to adopt, rather than displace, pre-existing state law." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544-45 (1994). "In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).

"Lease" is not defined in Section 365. However, the legislative history applicable to a security interest states that "[w]hether a consignment or a lease constitutes a security interest under the bankruptcy code will depend on whether it constitutes a security interest under applicable state or local law." S.Rep. No. 595, 95th Cong., 1st Sess. 314, *reprinted in* 1978 U.S.C.C.A.N. 5963,

6271; *see also Powers*, 983 F.2d at 90; *DWE*, 157 B.R. at 330 (citing legislative history of definition of security interest in support of application of state law in application of Section 365). This legislative history supports a finding that the bankruptcy code, as applied to leases in Section 365, adopts, rather than displaces, pre-existing state law.

Furthermore, the legislative history of Section 502(b)(6) cited above fails to demonstrate a "clear and manifest" statutory purpose to displace traditional state law. *See BFP*, 511 U.S. at 544-45. This legislative history indicates that whether a lease is a true lease depends upon the circumstances of each case. This requirement is consistent with state laws requiring that the facts of each case be reviewed to determine whether a lease is intended as security. *See, e.g., Powers*, 983 F.2d at 90 (Illinois and Indiana law require court to determine whether a lease is intended as security by the facts of each case); *Pillowtex*, 349 F.3d at 717 (under New York law, whether a transaction creates a lease or security interest is determined on a case-by-case basis); *Pittsburgh Sports*, 239 B.R. at 84 (Pennsylvania law requires an examination of the particular facts and circumstances of each case).

This legislative history also states that the "distinction between a true lease and a financing agreement is based upon the economic substance of the transaction." Reviewing the "economic substance" or "economic realities" is consistent with state law. *See In re Yarbrough*, 211 B.R. 654, 657 (W.D. Tenn. 1997) (Mississippi law requires the court to look to the economic realities of the transaction in determining whether a transaction is a lease or security interest); *In re Vital Prod. Co.*, 210 B.R. 109, 112 (N.D. Ohio 1997) (Ohio state law, as provided in the U.C.C., focuses on economic realties of a transaction in determining whether the transaction is a true lease); *In re Nite Lite Inns*, 13 B.R. 900, 907-08 (S.D. Cal. 1981) (*Nite Lite*) (considering the economic substance of

the transaction in applying California law to determine whether transaction was a true lease); *In re Hoagland*, 1996 WL 33406128 (N.D. Ill. Feb. 26, 1996) (the economic realities of the transaction are relevant factors under Illinois law in determining whether a lease is a true lease). Accordingly, the legislative history of Section 502(b) fails to demonstrate a clear and manifest statutory purpose to displace traditional state law. *See BFP*, 511 U.S. at 544-45. In essence, United concedes this as it argues that the substantive inquiry under both California law and federal law is the same.

Federal courts, including the Seventh Circuit, have applied state law in determining whether a lease is a true lease for purposes of Section 365, citing *Butner*. *See Powers*, 983 F.2d at 90; *In re Pillowtex, Inc.*, 349 F.3d 711, 716 (3rd Cir. 2003) (*Pillowtex*); *In re Sankey*, 307 B.R. 674, 678 (D. Alaska 2004); *In re Pittsburgh Sports Assoc. Holding Co.*, 239 B.R. 75, 83 (W.D. Pa. 1999) (*Pittsburgh Sports*); *In re Fox*, 229 B.R. 160, 164 (N.D. Ohio 1998); *In re DWE Screw Prod., Inc.*, 157 B.R. 326, 330 (N.D. Ohio 1993) (*DWE*).

In contrast, some courts, including the bankruptcy court here, have applied a federal rule of law, known as the economic realities test, to determine whether a lease is a true lease for purposes of Section 365. These courts cite the above-quoted language of the legislative history of Section 502(b)(6), read together with Section 365, in support of their finding that a federal rule of law must be applied in determining whether a lease of real property[1] is a true lease for purposes of Section 365 because these aspects provide an adequate "federal interest" to justify using a federal rule of law

---

[1]Those sections of Section 365 applicable to both real and personal property are specifically indicated. *See, e.g.,* 11 U.S.C. § 365(d)(1). Any section applicable to only real property is specifically identified. *See. e.g.,* 11 U.S.C. § 365(d)(4).

rather than state law to define this particular property interest. *See Moreggia*, 852 F.2d at 1182; *In re PCH Assoc.*, 804 F.2d 193, 200 (2nd Cir. 1986) (*PCH*); *In re Kar Dev. Assoc., L.P.*, 180 B.R. 629, 638 (D. Kan. 1995) (*Kar*); *In re Tak Broadcasting Corp.*, 137 B.R. 728, 732 (W.D. Wis. 1992).

However, based on the legislative history and the case law, particularly *Butner* and *Powers*, the bankruptcy court erred in applying federal law in determining whether the leases at issue were true leases.

The Appellants' third and fourth issues are also related. Appellants argue that the bankruptcy court erred in granting United's motion for summary judgment and denying the Appellants' motions for summary judgment. United argues that summary judgment was proper under either federal law or California law because, substantively, the law is the same.

Under California law, an agreement is *presumptively* a lease of real property if it includes a designation of the parties, contains a definite description of the leased property, provides for periodic payment of rent for the term of the lease, and provides a right to occupy the property to the exclusion of the grantor. *See In re SCCC Assoc. II Ltd.*, 158 B.R. 1004, 1013 (N.D. Cal. 1993) (*SCCC*) (emphasis added).

Here, the Facilities Lease designates the parties, contains a definite description of the leased property, provides for periodic payment of rent over the term of the lease, and provides United with a right to occupy the leased premises to the exclusion of the grantor. Accordingly, the Facilities Lease is presumed to be a true lease under California law. This presumption may be rebutted by United by establishing by *clear and convincing evidence* that the parties intended for the Facilities

Lease to disguise a substantive transfer of ownership of or an encumbrance of the leased SFO Maintenance Facility. *See SCCC*, 15 B.R. at 1009-14; *Fox v. Peck Iron & Metal Co.*, 25 B.R. 674, 688 (S.D. Cal. 1982) (*Fox*) (emphasis added).

Whether a lease agreement is a true lease or one intended solely for security is determined by determining the intent of the parties at the time of the execution of the document. *See Fox*, 25 B.R. at 688. The intent of the parties is determined by reviewing all facts and circumstances of the transaction, including the economic substance of the transaction. *See Fox*, 25 B.R. at 688; *Nite Lite*, 13 B.R. at 908. Factors considered in this analysis include: (1) whether the transaction actually transfers the normal risks and responsibilities of landlord to the lessor; (2) whether the payments under the lease are reasonably designed to compensate the lessor for the use of the property or simply reflect the repayment of the lessor's acquisition cost plus interest; *Fox*, 25 B.R. at 688; and (3) whether the lessor retains an economically significant interest in the property, *SCCC*, 158 B.R. at 1013.

The application of these factors to the facts demonstrates that the Facilities Lease was a true lease. Under the Facilities Lease, United is required to pay the taxes, maintenance, and insurance – generally referred to as a triple net lease. While the payment of taxes, maintenance, and insurance are typically viewed as usual obligations indicating ownership, as opposed to a landlord-tenant relationship, the use of triple net leases are not unusual terms in ground leases. *See SCCC*, 158 B.R. at 1013. Furthermore, United concedes that it could never own the leased property or facilities. As such, United's responsibilities under the lease that are generally an indicia of ownership fail to demonstrate that the lease is not a true lease.

The payments under the lease are also reasonably designed to compensate Appellants. The

aggregate rental payments required by the Facilities Lease include the amount needed to pay the bonds in accordance with their terms and the administrative costs associated therewith. However, the amount of the rental payments also constituted reasonable compensation for the use and occupation of the 20-acre portion of the 180-acre SFO Maintenance Facilities. HSBC's expert demonstrated that United's rent payments were reasonable compensation for the use and occupation of the relevant portion of the SFO Maintenance Facilities. United provided no evidence to the contrary. Furthermore, rent payments are frequently calculated with reference to payment in respect to financing obligations. *See City of Desert Hot Springs v. County of Riverside*, 154 Cal. Rptr. 297, 301 (1979) (*Desert Springs*). A "'lease-leaseback' arrangement 'as a method of financing construction' is not inconsistent with the existence of a lease." *Desert Springs*, 154 Cal. Rptr. at 301. In addition, United could terminate the Facilities Lease by prepaying the rent due for the lease term, and there was no reduction in rent corresponding to the shorter lease term in the event of prepayment. An absolute obligation to pay rent for the full lease term is indicative of a true lease. *See 7 Miller & Star California Real Estate* § 19.86 (3d ed. 2001).

Lastly, the lessor retained an economically significant interest in the property leased to United, and United retained no interest in the leased property. United concedes that it did not own, will not own, and cannot ever own any of the facilities leased to United. The Facilities Lease does not have an option to purchase at the end of the lease. United has retained no interest at the end of the lease.

United argues, and the bankruptcy court found, that because CSCDA does not retain an ownership interest at the end of the Facilities Lease, the Facilities Lease cannot be a true lease. The bankruptcy court held this factor to be the most important and concluded that the Facilities Lease

was not a true lease based on this factor alone. However, this analysis and resultant finding focus on the lessor instead of the lessee. The finding also fails to take into account that CSCDA had a right to re-let the relevant portion of the SFO Maintenance Facilities if United defaulted. The right to re-let is indicative of a true lease, not a financing arrangement.

Under the bankruptcy court's logic, every sublease that has a term equal to the term of the underlying lease would be a disguised financing arrangement rather than a true lease because the sublessor has a lack of reversionary interest at the end of the lease term. For example, if lessor A executed a one-year lease of an apartment with lessee B, and lessee B subleased the apartment six months later to sublessee C for the remaining six months, at the conclusion of the sublease, the apartment reverts back to lessor A. Under the bankruptcy court's reasoning, the sublease would not be a true lease because lessee B did not have a reversionary interest at the end of the lease term. Accordingly, the lack of a reversionary interest in CSCDA at the end of the Facilities Lease does not dictate that the Facilities Lease was not a true lease.

The Appellants also argue that United is equitably estopped from changing its previous position that the Facilities Lease was a lease. Under California law, the elements of equitable estoppel are: (1) the party to be estopped must be appraised of the facts; (2) that party must intend that its conduct be acted upon, or must so act that the other party has a right to believe that it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) the other party must rely on the conduct to its injury. *See Ace Am. Ins. Co. v. Walker*, 18 Cal. Rptr. 3d 1, 8 n.2 (2004). Here, there is no evidence demonstrating that United was appraised of the fact that it would be filing for bankruptcy and that the Facilities Lease would be an issue of dispute. Accordingly, the doctrine of equitable estoppel is not applicable.

Lastly, the Appellants argue that, under California law, United had sixty days to challenge the Facilities Lease and that United failed to do so; therefore, United cannot now challenge the lease. Nothing in the record indicates that Appellants presented this argument to the bankruptcy court, and the bankruptcy court did not address the issue in its March 30, 2004 judgment now on appeal before this Court. Accordingly, this issue is waived on appeal. *See In re Image Worldwide, Ltd.*, 139 F.3d 574, 581 (7th Cir. 1998).

## CONCLUSION

Based on the foregoing, the March 30, 2004 judgment of the bankruptcy court order, granting summary judgment in favor of United based on its finding that the Facilities Lease was not a true lease, is reversed.

Date: November 15, 2004

John W. Darrah, Judge
United States District Court